UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Robert Jackson, | Case No.: 2:20-cv-01322-JAD-VCF |
| Plaintiff | |
| v. | **Order Granting Motion for Reconsideration, Reopening Case, and Screening Complaint** |
| Nevada Department of Corrections, et al., | |
| Defendants | [ECF Nos. 7-1, 15] |

Plaintiff Robert Jackson brings this civil-rights action under 42 U.S.C. § 1983. On September 21, 2021, I dismissed this action without prejudice because Jackson failed to submit a complete application to proceed *in forma pauperis* or pay the full filing fee for a civil action by the court-ordered deadline.[1] The Clerk of Court entered judgment the next day.[2] On September 27, 2021, the court received Jackson's missing financial documents and a letter from Jackson, dated September 20, 2021, stating that the law library inmate clerk had just delivered his financial certificate and inmate account statement to him.[3] On October 12, 2021, Jackson filed a motion for reconsideration under Federal Rule of Civil Procedure 60(b) and sought to reopen his case in light of prison officials withholding his documents until after the court's deadline.[4]

---

[1] ECF No. 12 (order).
[2] ECF No. 13 (judgment).
[3] ECF No. 14 (letter).
[4] ECF No. 15 (motion).

I grant Jackson's motion for reconsideration, vacate the judgment, reopen the case, reinstate his application to proceed *in forma pauperis*[5], and screen his first amended complaint[6] under 28 U.S.C. § 1915A. Upon screening, I find that Jackson has not pled any colorable claims, so I dismiss his first amended complaint with leave to amend by February 11, 2022.

## I. Motion for reconsideration [ECF No. 15]

Jackson asks the court to set aside the judgment dismissing this action. Federal Rule of Civil Procedure 60(b)(1) states that a court may relieve a party or its legal representative from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect."[7] In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*,[8] the Supreme Court interpreted "neglect" to encompass "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."[9] In assessing whether a set-side is justified by a party's excusable neglect, courts apply a four-part test: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.[10]

I have considered these factors and find that they weigh in favor of setting aside judgment in this case. Based on Jackson's September 27, 2021, filing, it appears that he attempted to file a motion for an extension of time to file his financial documents, even though

---

[5] ECF No. 7 (*in forma pauperis* application).
[6] ECF No. 7-1 (first amended complaint).
[7] Fed. R. Civ. P. 60(b)(1).
[8] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).
[9] *Id*. at 388.
[10] *Id*. at 395.

the court did not receive that motion, and then promptly wrote to the court to notify it that he had received his financial certificate and no longer needed an extension.  It further appears that Jackson sought an extension of time because prison officials did not promptly return his financial documents to him.  I grant Jackson's motion to reopen this case and set aside judgment.  In doing so, I also reinstate Jackson's application to proceed *in forma pauperis*[11] as an active, pending motion and consider his application complete when looking at ECF No. 7 and ECF No. 15 at 8–24.

## II.	Screening standard

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[12] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[13]  All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[14]

---

[11] ECF No. 7.

[12] *See* 28 U.S.C. § 1915A(a).

[13] *See* 28 U.S.C. § 1915A(b)(1)(2).

[14] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[15] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[16] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[17] but a plaintiff must provide more than mere labels and conclusions.[18] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[19] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[20]

## III. Screening the first amended complaint[21]

In the first amended complaint, Jackson sues multiple defendants for events that took place from March to November 2018 while he was incarcerated at High Desert State Prison ("HDSP").[22] He sues defendants NDOC, NDOC Director James Dzurenda, Warden Brian Williams, Associate Warden Jennifer Nash, Sergeant Kelly Quinn, Correctional Officer ("C/O") M. Natali, Senior C/O Kerry Hunter, Food Services Manager Duane Wilson, and Sergeant

---

[15] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[16] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[17] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[20] *Id*.

[21] The operative complaint is ECF No. 7-1. I direct the Clerk of the Court to strike ECF Nos. 8 and 9. *See* ECF Nos. 10, 11.

[22] ECF No. 7-1 at 1.

Joseph Dugan.[23] Jackson alleges seven claims (which he labels as claims A, B, C, D, E, F, and G) and seeks declaratory, injunctive, and monetary relief. *Id.* at 8-9.

Although Jackson is suing about events that took place in 2018, he describes events that took place years earlier to give context to the 2018 events. Jackson alleges the following: On September 9, 2015, Jackson initiated the grievance process to address prison officials' refusal to provide him with a nutritionally adequate vegan diet per his religion.[24] One week later, prison officials transferred Jackson to Ely State Prison. In November 2016, Jackson filed a civil rights lawsuit against Nash, Wilson, and others.

On December 17, 2017, Nash and Wilson forced Jackson into a modified common fare diet without warning.[25] Jackson spoke to Sgt. Rivera and told Rivera about his active lawsuit and Nash and Wilson's attempts to force an unapproved diet on Jackson. Sgt. Rivera commented, "I heard about you." When Jackson returned to the dining hall, Rivera recorded Jackson's conversation with the free staff explaining how Nash and Williams had lied to the federal court. Nash and Williams used senior officers to conduct surveillance on Jackson. This surveillance proceeded "other retaliatory incidents." Nash relied on Hunter to extensively surveil and charge Jackson.

On March 1, 2018, Natali and C/O Bulaglag conducted a targeted search of Jackson's cell.[26] Natali told Jackson he was "okay" because there had been no contraband in Jackson's property. Prison officials locked Jackson and his cellmate in the showers and then resumed the cell search. Shortly after, Natali asked Jackson's cellmate if he had anything else in his bunk.

---

[23] *Id.* at 1–4.
[24] *Id.* at 5.
[25] *Id.* at 7.
[26] *Id.* at 5.

The cellmate responded, "no." Natali and Bulaglag returned to the cell with Quinn. Natali asked Quinn if Jackson could be written up for his books.

After the search, Jackson asked Quinn and Natali if both he and his cellmate would be written up and placed in disciplinary segregation before being served charges or having a hearing.[27] Quinn responded that both could be written up, but he was unsure if Jackson and his cellmate would be moved. Prison officials placed Jackson on "red tag" status with his cellmate for 48 hours before restoring them to full level one privileges including going back to work in the culinary. When an inmate was on "red tag" status, the inmate was confined to his cell full time.

When Jackson returned to work, he asked Dugan if a write up was pending.[28] Dugan responded, "Oh, I heard about that." The next day, Jackson attended the law library as scheduled. When he returned to work, the culinary officer denied Jackson entry and explained that prison officials told him not to let Jackson in and to send Jackson back to his unit. When Jackson arrived at his unit, prison officials directed him to roll up his property and sent him to disciplinary segregation without a notice of charges or a hearing. Seven days later, Jackson received a notice of charges that omitted the location of the contraband.

On March 14, 2018, Natali spoke to Jackson in disciplinary segregation and apologized to Jackson.[29] Natali claimed that he did not know that Jackson would be sent to the hole and lose his job. Natali tried to convince Jackson that his write up specified that Jackson had not been involved. However, according to Jackson, the write up contradicts this statement. After

---

[27] *Id.* at 6.
[28] *Id.*
[29] *Id.*

6

"languishing" in the hole for a month, Jackson was found "not guilty" of the charges on March 29, 2018.  Jackson initiated the grievance process on March 6, 2018.

After leaving the hole, prison officials put Jackson in an educational unit for four months.[30]  However, Jackson could not participate in any educational programming due to his sentencing structure.  Nine months later, prison officials "mysteriously" hired Jackson to the floor crew without his request for a position.

Jackson alleges First Amendment retaliation (claim A) and Eighth Amendment "harassment" (claim B) against Nash and Wilson for directing Dugan, Hunter, Natali, and Quinn to carry out a "campaign of harassment" against Jackson in retaliation for filing a lawsuit against Nash and Wilson.[31]  Jackson alleges First Amendment retaliation (claim C) and Eighth Amendment harassment (claim D) because Nash directed Quinn and Natali to execute a targeted cell search and write a deceptive notice of charges against Jackson because of the lawsuit he filed against Nash.   Jackson alleges Fourteenth Amendment due process violations (claim E), Eighth Amendment harassment (claim F), and First Amendment retaliation (claim G) against Nash, Wilson, Dugan, and Hunter for firing Jackson from the culinary unit and moving him to disciplinary segregation before Jackson had a full hearing.

A. **Retaliation (Claims A, C, and G)**

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts.[32]  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory

---

[30] *Id.* at 7.

[31] *Id.* at 8.

[32] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[33]

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[34] Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[35]

I find that Jackson fails to allege colorable retaliation claims for the 2018 events. Jackson has not sufficiently connected his previously filed lawsuit as the reason for his 2018 cell search, loss of job, and notice of charges. Jackson also does not sufficiently link the previously filed lawsuit and Nash to the actions of the defendants in 2018. Jackson conclusively states that Nash ordered these defendants to search his cell, fire him, and write him up but he does not provide any allegations to support that conclusion. I dismiss the retaliation claims without prejudice with leave to amend.

### B.  Harassment (Claims B, D, and F)

I dismiss Jackson's Eighth Amendment claim for "harassment" with prejudice as amendment would be futile. There is no Eighth Amendment claim for "harassment."[36] Instead,

---

[33] *Id*.

[34] *Id*. at 567–68.

[35] *Id*. at 568–69.

[36] *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (holding that verbal harassment or abuse is insufficient to state a constitutional deprivation under 42 U.S.C. § 1983).

Jackson needs to allege specific acts by a defendant that would rise to the level of a constitutional violation.

### C.     Due Process (Claim E)

I dismiss Jackson's due process claim without prejudice because it appears that Jackson was confined to administrative segregation rather than disciplinary segregation in March 2018. Based on the allegations, Jackson moved to a segregation unit before receiving a notice of charges. Prison officials issued a notice of charges while Jackson was in segregation and then released Jackson after prison officials held a hearing and found him not guilty.

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law."[37] However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."[38] "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."[39] The Supreme Court held that a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[40]

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the

---

[37] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).
[38] *Id*.
[39] *Id*.
[40] *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

9

evidence justifying the decision to segregate the prisoner.[41] After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement.[42] An inmate has the right to notice and the right to be heard.[43] The Ninth Circuit has held that a prisoner's procedural-due-process claim should not be dismissed on the pleadings if he alleges material differences between the conditions in general population and administrative segregation.[44]

I find that Jackson fails to state a colorable claim for administrative segregation due process violations. Based on the allegations, Jackson was in administrative segregation for less than 29 days and did have a hearing that reviewed his status. Once prison officials held their disciplinary hearing, they released Jackson from administrative segregation.

To the extent that Jackson is arguing that he did not receive due process related to his disciplinary hearing, I find that Jackson fails to state a colorable claim. Based on the allegations, prison officials issued Jackson a notice of charges, held a disciplinary hearing, and ultimately found him not guilty and released him from administrative segregation. This does not state a due process violation. Although I do not believe that Jackson can state due process violations for either his administrative segregation status or his disciplinary hearing, I grant Jackson leave to amend his complaint in case I have misinterpreted his allegations.

---

[41] *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).
[42] *See Hewitt*, 459 U.S. at 477 n.9.
[43] *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992).
[44] *See Jackson v. Carey*, 353 F.3d 750, 755–57 (9th Cir. 2003).

### IV. Leave to amend

I grant Jackson leave to amend his First Amendment retaliation and Fourteenth Amendment administrative segregation due process claims. If Jackson chooses to file a second amended complaint, he is advised that a second amended complaint replaces the original and first amended complaints, so the second amended complaint must be complete in itself.[45] He must file the second amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "Second Amended Complaint." Jackson must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each count, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights. **He must file the second amended complaint by February 11, 2022.**

### Conclusion

IT IS THEREFORE ORDERED that the motion for reconsideration **[ECF No. 15] is GRANTED**. The Clerk of the Court is directed to

- **VACATE** the judgment [ECF No. 13];
- **REOPEN** this case;
- **REINSTATE** the application to proceed *in forma pauperis* [ECF No. 7] as an active, pending motion, which will be revisited once it is determined whether the plaintiff can state colorable claims in his amended complaint;

---

[45] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

11

- **FILE** the first amended complaint (ECF No. 7-1) as the operative complaint in this case;

- **STRIKE** docket entries ECF Nos. 8 and 9; and

- **SEND** Jackson the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his first amended complaint (ECF No. 7-1).

IT IS FURTHER ORDERED that:

- The Eighth Amendment harassment claims are DISMISSED with prejudice and without leave to amend; and

- The First Amendment retaliation and Fourteenth Amendment administrative-segregation due-process claims are DISMISSED without prejudice and with leave to amend by February 11, 2022. If Jackson chooses to file a second amended complaint, he must use the approved form and write the words "Second Amended" above the words "Civil Rights Complaint" in the caption. The second amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>. If Jackson does not file a second amended complaint, by February 11, 2022, this case will be dismissed.**

Dated: January 12, 2022

_____
U.S. District Judge