UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT JACKSON,<br><br>　　　　　　　　　Plaintiff,<br>v.<br>NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,<br>　　　　　　　　　Defendants. | Case No. 2:20-cv-01322-ART-VCF<br><br>SCREENING ORDER ON SECOND AMENDED COMPLAINT<br>(ECF No. 20) |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a second amended civil rights complaint ("SAC") pursuant to 42 U.S.C. § 1983, and has filed an application to proceed *in forma pauperis*. (ECF Nos. 7, 20.) The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's SAC under 28 U.S.C. § 1915A.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's

claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block,* 932 F.2d 795, 798 (9th Cir. 1991).

## II.     SCREENING OF SAC

In the SAC, Plaintiff sues multiple Defendants for events that took place while he was incarcerated at High Desert State Prison ("HDSP"). (ECF No. 20 at 1-3.) Plaintiff sues Defendants the NDOC, Warden Brian Williams, Associate Warden Jennifer Nash, Food Service Manager III Duane Wilson, Culinary Sergeant Joseph Dugan, Culinary Senior Officer Kerry Hunter, Director James Dzurenda, Correctional Officer M. Natali, and Sergeant Kelly Quinn. (*Id.*) Plaintiff brings two claims and seeks monetary and injunctive relief. (*Id.* at 4-8.)

The SAC alleges the following. In November 2016, Plaintiff sued Nash and Wilson for violating his right to a "nutritionally adequate" vegan diet, a requirement of his religion. (*Id.* at 4.) At the time, Nash was the head of the culinary department at HDSP, while Wilson ran the department on a "day to day" basis. (*Id.*) Dugan, for his part, was responsible for "security in culinary," and Hunter was the "senior officer in culinary." (*Id.*) All had "the power to fire." (*Id.*)

Plaintiff helped prepare "religious diet trays" for the culinary department. (*Id.*) Following the filing of his lawsuit, Plaintiff learned from other inmates that

Defendants had been making "inquiries" about the litigation. (*Id.*) For example, Nash visited the "common-fare kitchen" on Plaintiff's days off to ask about him. (*Id.*) On one occasion, Plaintiff walked into the "culinary free-staff office," interrupted a meeting about "what to do about him and his lawsuit," and "directly address[ed]" Wilson (*Id.*) Around this time, "rumors [ ] began to circulate that Plaintiff would be fired soon due to his lawsuit, and that [Defendants] needed a good excuse before they could act." (*Id.*)

On March 1, 2018, Natali conducted a "targeted" search of Plaintiff's cell, confiscating items belonging to Plaintiff's cellmate. (*Id.*) Twenty minutes after the search, Quinn arrived to conduct a "consecutive search" focused on the area that Natali had just inspected. (*Id.* at 4, 6.) Although Natali had told Plaintiff he was "in the clear," Quinn "sought other excuses to write [him] up," including his books. (*Id.* at 6.) Plaintiff and his cellmate were ultimately confined to their cell for two days before having their "Level 1 privileges completely restored, including work, law library, and chapel." (*Id.*)

When Plaintiff returned to work at the culinary department, he asked Dugan about the incident. (*Id.*) Dugan said he had "heard about" it, which struck Plaintiff as odd because Dugan "was not a unit officer." (*Id.*) The next day, Plaintiff was denied entry to the culinary department and told to return to his unit, where he and his cellmate were "rolled up" and ultimately sent to segregation. (*Id.*)

Plaintiff received notice of the charges against him on March 8, 2018. (*Id.*) The notice falsely claimed that it had been served on March 2, 2018. (*Id.*) In fact, based on Plaintiff's analysis of the metadata, the notice was not even written until March 8. (*Id.*) This was a violation of NDOC regulations requiring that "charges [be] written by end of shift." (*Id.*) Furthermore, the notice listed the "initial" charging employee as Natali, but this was later changed to Quinn. (*Id.*)

Listing Quinn as the charging employee was another violation of NDOC regulations, because Quinn was "not the searching officer." (*Id.*)

On March 14, 2018, Natali visited Plaintiff in segregation. (*Id.*) Natali apologized to Plaintiff about the charges, explaining that the write-up, "as originally written," absolved him. (*Id.*) Plaintiff subsequently learned from discovery in his 2016 lawsuit that Nash had been working with Hunter to "trump up charges against" Plaintiff and "gain a legal advantage." (*Id.* at 5-6.)

The charges against Plaintiff were "eventually dismissed as unfounded." (*Id.* at 6.) In the meantime, Plaintiff lost "ten months of stat time" and was deprived of the "starkly different quality of life enjo[y]ed with Level 1 status," including "yard seven days a week, gym five days a week, chapel, employment, law library access three days a week, twelve-hour tier time, unrestricted phone calls to family, packages, [and] full commissary." (*Id.* at 5.)

Based on these allegations, Plaintiff asserts a First Amendment retaliation claim and a Fourteenth Amendment procedural due process claim. (*Id.* at 4-6.)

### A. First Amendment Retaliation

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68.

For First Amendment retaliation purposes, "protected conduct" does not need to be "tethered to the speech or associational freedoms secured by that Bill of Rights provision." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1242 (9th Cir. 2013). Instead, "a claim for retaliation can be based upon the theory that the government imposed a burden on the plaintiff, more generally, because he exercise[d] a constitutional right." *Id.* (internal quotation marks omitted). A cell search constitutes an adverse action sufficient to support a First Amendment retaliation claim. *See Fields v. Vikjord*, No. 09-cv-01770, 2011 WL 4055283, at *2 (E.D. Cal. Sept. 12, 2011) (holding that an "alleged retaliatory cell search is an adverse act for retaliation purposes"). So does "filing false accusations against an inmate." *Irvin v. Roldan*, No. 19-cv-1418, 2019 WL 8105897, at *4 (C.D. Cal. Dec. 23, 2019). Finally, total chilling is not required to state a retaliation claim; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Rhodes*, 408 F.3d at 568-69.

A defendant is liable under § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, to state a claim against a supervisor for free speech violations under the First Amendment, a plaintiff must allege "facts that demonstrate an immediate supervisor knew about the subordinate violating another's federal constitutional right to free speech, and acquiescence in that violation." *OSU Student All. v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012).

Plaintiff states a colorable First Amendment retaliation claim. He alleges that in November 2016, he engaged in protected activity by suing Nash and

Wilson for failing to accommodate his religious dietary needs. (ECF No. 20 at 4.) After filing suit, Plaintiff, a meal-preparer in the culinary department, learned that (i) Nash had been asking about him in the "common-fare kitchen" on his days off, and (ii) a staff meeting had been held to discuss his lawsuit. (*Id.*) Plaintiff also heard "rumors" that he "would be fired soon due to his lawsuit, and that [Defendants] needed a good excuse before they could act." (*Id.*) The retaliation allegedly occurred in March 2018, when Natali and Quinn searched Plaintiff's cell, issued "unfounded" charges against him, and caused him to be sent to administrative segregation. (*Id.* at 4-6.) Notably, Plaintiff identifies several procedural irregularities in this process—the notice of charges contained an incorrect date of service, the notice was written several days after the cell search, and the name of the charging officer was changed. (*Id.* at 6.) Plaintiff subsequently learned from discovery in his 2016 lawsuit that, in an attempt to gain a "legal advantage," Nash had been working with Hunter to drum up charges against him. (*Id.* at 5-6.)

Taken together, these allegations set forth "a chronology of events from which retaliation can be inferred." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *see also Hendricks v. Mallozzi*, No. 20-cv-1035, 2022 WL 1129887, at *6 (N.D.N.Y. Jan. 14, 2022) ("While Defendants' alleged failure to follow [Department of Corrections] policies and procedures does not explicitly state an intent to retaliate, [it] is consistent with and impl[ies] a retaliatory motive"), *adopted by* 2022 WL 856885 (N.D.N.Y. Mar. 23, 2022); *Roy v. NH State Prison*, No. 07-cv-353, 2008 WL 2795868, at *10 (D.N.H. July 18, 2008) ("[T]he procedural irregularities that occurred here raise a substantial inference that defendants were motivated by an intent to retaliate against plaintiff rather than justifiably punish him."). Accordingly, the First Amendment retaliation claim will proceed against Nash, Natali, Hunter, and Quinn. The claim will not proceed against any other Defendant, however, because Plaintiff has failed to allege facts

showing "personal participation" by the remaining Defendants in the alleged retaliation. *Taylor,* 880 F.2d at 1045.

### B.     Procedural Due Process

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id.* "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* The Supreme Court held that a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner,* 515 U.S. 472, 484 (1995).

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n.9. An inmate has the right to notice and the right to be heard. *Mendoza v. Blodgett*, 960 F.2d 1425, 1430 (9th Cir. 1992).

Plaintiff fails to state a colorable procedural due process claim. Even assuming that his placement in administrative segregation following the cell search deprived him of a liberty interest, he fails to allege that he was denied any of the requisite procedural protections. Plaintiff does not plead that he was deprived of a hearing. Nor does he allege that prison officials declined to allow

him to present his views on the placement. Indeed, the only allegation Plaintiff offers on this score is that less than a week after he was sent to administrative segregation, he received notice of the charges against him. (ECF No. 20 at 6.) Because Plaintiff "alleges no facts supporting his claim that he was deprived of the procedural due process protections" to which he was entitled, he "fails to state a due process claim upon which relief may be granted." *Kons v. Lopez*, No. 08-cv-00994, 2009 WL 900158, at *2 (E.D. Cal. Mar. 31, 2009); *see also Simpson v. Feltsen*, No. 09-cv-00302, 2010 WL 1444487, at *5 (E.D. Cal. Apr. 9, 2010) ("Assuming, without deciding, that [plaintiff]'s five-month administrative segregation constituted an atypical and significant hardship for him in relation to the ordinary incidents of prison life, [he] fails to state a claim because he was not deprived of procedural due process in connection with his administrative segregation.").[1]

In its previous screening order, the Court likewise dismissed Plaintiff's procedural due process claim because there were no allegations that he was denied the process he was due. (ECF No. 18 at 10.) The Court noted that, although it did "not believe that [Plaintiff] [could] state due process violations for either his administrative segregation status or his disciplinary hearing," it would nonetheless grant him "leave to amend his complaint in case [it had] misinterpreted his allegations." (*Id.*) Plaintiff's SAC fails to remedy the pleading deficiencies identified in the screening order. Thus, because Plaintiff has already had an opportunity to fix these deficiencies, the Court dismisses the procedural due process claim with prejudice. *See Zucco Partners, LLC v. Digimarc Corp.*, 552

---

[1] Plaintiff may be attempting to base his due process claim on the issuance of the false notice of charges. Any such claim would fail, because "[t]here is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Moore v. Calderon*, No. 20-cv-00397, 2020 WL 5017289, at *4 (E.D. Cal. Aug. 25, 2020), *adopted by* 2021 WL 1541296 (E.D. Cal. Apr. 20, 2021). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue." *Id.*

F.3d 981, 1007 (9th Cir. 2009) (leave to amend not required when plaintiff was previously allowed to amend but failed to correct identified deficiencies).

### C.   Defendant NDOC

The Court dismisses the NDOC from the entirety of this action with prejudice. The NDOC is an arm of the State of Nevada and is not a "person" for purposes of 42 U.S.C. § 1983. *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Black v. Nevada Dep't of Corr.*, 2:09-cv-2343-PMP-LRL, 2010 WL 2545760, *2 (D. Nev. June 21, 2010).[2]

## III.   CONCLUSION

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 7) is deferred.

It is further ordered that the operative complaint is the SAC (ECF No. 20) and that the Clerk of the Court send Plaintiff a courtesy copy of it.

It is further ordered that the Fourteenth Amendment procedural due process claim is dismissed with prejudice, as amendment would be futile.

It is further ordered that Defendants Williams, Wilson, Dugan, and Dzurenda are dismissed from the entirety of this action without prejudice.

It is further ordered that Defendant the NDOC is dismissed from the entirety of this action with prejudice.

It is further ordered that the First Amendment retaliation claim will proceed against Defendants Nash, Natali, Hunter, and Quinn.

It is further ordered that, given the nature of the claim that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendants an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be

---

[2] In addition, because Plaintiff fails to state any colorable claims against Williams, Wilson, Dugan, or Dzurenda, the Court dismisses them from the entirety of this action without prejudice.

filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 statutory filing fee for a civil action. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Plaintiff's application to proceed *in forma pauperis*. If Plaintiff is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $50 administrative filing fee, for a total of $400, will be due immediately.[3]

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The

---

[3] Because this action was commenced before the December 1, 2020 increase in the filing fee, Plaintiff would be subject to a total fee of $400.

responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Plaintiff needs a translator to participate in the mediation program, Plaintiff will file a notice identifying the translation language and the need for the translator within 30 days from the date of this order.

The Clerk of the Court is directed to electronically serve a copy of this order, and a copy of Plaintiff's SAC (ECF No. 20), on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED THIS 10th day of May 2022.

_____
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT JACKSON,<br><br>   Plaintiff.<br><br>v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>   Defendants. | Case No. 2:20-cv-01322-ART-VCF<br><br>REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

 \_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

 \_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

13

____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____         _____

|   |   |
|---|---|
| Print | Signature |
| Address: _____ | Phone: _____ |
| _____ | Email: _____ |